**Dennis BECK for himself and all others similarly situated, Plaintiffs,**

**v.**

**CANTOR, FITZGERALD & CO., INC., et al., Defendants.**

**No. 84 C 10557.**

United States District Court, N.D. Illinois, E.D.

Nov. 19, 1985.

---

Arthur Grebow, Edward Gartenberg, Antin, Stern, Litz & Grebow, Los Angeles, Cal., Michael Connelly, Edward Ruberry, John Mustes, Connelly, Ruberry & Mustes, Chicago, Ill., for plaintiffs.

Stephen A. Marshall, Martin J. Schwartz, Rubin, Baum, Levin, Constant & Friedman, New York City, Roger Harris, Mitchell Bryan, Altheimer & Gray, Donald Egan, Francis X. Grossi, Jr., Patrick J. Lamb, Katten, Muchin, Zavis, Pearl & Galler, Roger L. Longtin, Schuyler, Roche & Zwirner, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Presently pending before this Court are the various motions of the defendants, Xonics, Inc. ("Xonics") and the individual Xonics defendants, Cantor, Fitzgerald & Co., Inc. ("Cantor, Fitzgerald") and Larry Friend, and Laventhol & Horwath ("Laventhol"), to dismiss plaintiff Richard Beck's First Amended Complaint for failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to plead fraud with particularity, pursuant to Fed.R.Civ.P. 9(b), and for lack of pendent jurisdiction if the federal claims are dismissed. Defendant Laventhol has also moved to strike the allegations in paragraph 37 and the two paragraphs numbered 44, pursuant to Fed.R. Civ.P. 12(f), and for sanctions, pursuant to Fed.R.Civ.P. 11. Finally, after briefing was complete plaintiff moved for leave to file a surreply brief. These motions are granted in part and denied in part.

This case is a securities class action arising out of the sale through Cantor, Fitzgerald, a registered broker-dealer, of certain stock of Xonics to plaintiff Beck. The case involves an $8.8 million private placement by Cantor, Fitzgerald of 2 million shares of Xonics common stock to approximately 93 investors. Laventhol is the certified public accounting firm which audited Xonics' March 31, 1983 year-end financial statements. Although the allegations of the complaint are many and varied, the gist of the fraudulent scheme alleged is that the defendants induced Beck and the plaintiff class, which has yet to be certified, to purchase Xonics stock in February, 1983 with the representation that, although the stock being sold was then restricted and thus was not freely tradeable, the stock would be registered automatically with the Securities and Exchange Commission ("SEC") within four to five months and could then be resold at a substantial profit. Plaintiff

alleges that the defendants concealed the fact that SEC registration was neither "automatic" nor "guaranteed" and that they would and did submit a proposed registration statement to the SEC which was not in accordance with generally accepted accounting principles and was, therefore, rejected.

Plaintiff seeks relief against all defendants for violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, and Sections 12(2) and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77*l* (2) and 77q(a), in Count I; for violation of the Racketeering Influenced and Corrupt Organizations Act of 1976 ("RICO"), 18 U.S.C. §§ 1961, *et seq.*, in Count II; for common law fraud and negligence in Counts III and IV; for breach of fiduciary duty in Count V; and for civil conspiracy to violate the securities laws in Count VI.

### Facts [1]

In February, 1983, Xonics agreed with Cantor, Fitzgerald to place two million shares of Xonics stock through Cantor, Fitzgerald for sale to Accredited Investors as defined in Rule 501(a) of Regulation D of the Exchange Act. The stock was offered to plaintiff Beck in February, 1983. Xonics and Cantor represented to plaintiff orally and in writing that the stock was not registered under the Securities Act and could not be traded until registered with the SEC. Xonics and Cantor, Fitzgerald also represented that Xonics would file a registration statement with the SEC by late June or early July, 1983 and that approval by the SEC was "automatic" and "guaranteed." Plaintiff purchased 9,000 shares of Xonics stock on February 19, 1983 for $39,600.

During Xonics' fiscal year 1983, which began on April 1, 1982, Xonics spent substantial sums to improve certain of its existing product lines. Xonics treated some of these product enhancement costs as additions to capital in its third quarter report

filed with the SEC and capitalized a total of $1.5 million of product enhancement costs in its Annual Report on Form 10–K. These costs should have been treated as expenses, and the capitalization of the product enhancement costs was not in accordance with generally accepted accounting principles. The effect of Xonics' accounting treatment was that Xonics reported a net income of $136,000 for fiscal year 1983 rather than a loss of approximately $1.3 million. Xonics capitalized certain of its product enhancement costs because Xonics' officers and directors wanted to reflect a positive net income and maintain or increase the market price of Xonics stock.

In connection with the sale of stock, Cantor, Fitzgerald and Xonics directors and officers distributed to plaintiff and other members of the class unaudited quarterly financial statements for the last three quarters of fiscal year 1983. Each defendant participated in the preparation and distribution of the financial reports, which were distributed, in part, through the United States mails.

Laventhol and the other defendants knew of Xonics' reasons for capitalizing the product enhancement costs, knew that the capitalization was not in accordance with generally accepted accounting principles, and knew that the various financial statements prepared during fiscal year 1983 did not fairly present Xonics' financial conditions. Subsequent to the February, 1983 sale of stock, Laventhol conspired with the other defendants to submit an S–1 Registration Statement to the SEC knowing or recklessly disregarding the fact that the fiscal year 1983 annual statements were not prepared in accordance with generally accepted accounting principles. When the defendants submitted the Registration Statement, they knew that there was a substantial likelihood that the SEC would prevent the Registration Statement from becoming effective.

At some time prior to November 10, 1983, the SEC informed Xonics that Xonics'

---

**1.** The facts stated herein are those pled in the complaint, which the Court must accept as true for purposes of this motion to dismiss. *Conley*

*v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

treatment of its product enhancement costs as expenses rather than as additions to capital was not in accordance with generally accepted accounting principles and that Xonics' financial statements during fiscal year 1983 and the first quarter of fiscal year 1984 did not fairly present its financial position. To resolve its dispute with the SEC, Xonics announced on November 10, 1983 that it was restating its fiscal year 1983 financial statements as well as those for the first quarter of fiscal 1984. The effect of the restatement for fiscal 1983 was to change the reported net income of approximately $136,000 to a net loss of approximately $1.3 million. The effect of the change in the fiscal 1984 first quarter report was to increase the net loss by $800,000. On February 17, 1984, the same day that Beck instituted this lawsuit in the United States District Court for the Central District of California, Xonics filed its Chapter 11 petition for bankruptcy, which is now pending in the United States Bankruptcy Court for the Northern District of Illinois.

Plaintiff claims that these accounting practices were fraudulent and improper because the initially reported net figures created a falsely optimistic view of Xonics' performance and financial condition. Plaintiff further claims that when he and other class members purchased Xonics stock, they relied on the representations contained in the financial statements even though one of the financial statements, the fiscal year 1983 Report in Form 10–K, was not yet prepared when the Xonics stock was purchased.

On December 6, 1984, this case was transferred to this Court from the Central District of California after Judge Richard Gadbois granted Xonics' motion to transfer. The instant motions were filed shortly thereafter but not fully briefed until the summer of 1985.

### Discussion

#### I. *Rule 9(b) Motions*

▪ After reviewing the First Amended Complaint and all of the voluminous briefs filed by the parties, this Court agrees with the defendants that the First Amended Complaint fails to plead fraud with specificity as required by Rule 9(b). However, this Court is not convinced that plaintiff is not capable of stating a fraud claim at least against some of the defendants with sufficient particularity. Thus, plaintiff is granted leave to file a Second Amended Complaint within 30 days to cure this and other defects as set forth in this Opinion.

Because it is not the function of this Court to educate plaintiff's attorneys as to how to plead fraud with particularity, and because defendants have already pointed out the many deficiencies of the plaintiff's First Amended Complaint in this respect, this Court will not elaborate on those deficiencies except to note the following:

1) plaintiff has not identified the persons who made the alleged oral and written misrepresentations, the persons to whom the representations were made, the content of those misrepresentations, and where or when such misrepresentations were made, *see, e.g., Rudolph v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 100 F.R.D. 807 (N.D.Ill.1984); *Barr Co. v. Safeco Insurance Co. of America,* 583 F.Supp. 248 (N.D.Ill.1984);

2) plaintiff has not adequately distinguished among the many defendants who are alleged to have participated in the fraud, *see, e.g., Kennedy v. Nicastro,* 503 F.Supp. 1116, 1122 (N.D.Ill.1980); *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270, 1278 (N.D.Ill.1976);

3) plaintiff has not alleged that *each* defendant violated the wire or mail fraud statutes at least twice, nor has he alleged with specificity the time, place, and manner of such violations, so as to plead a RICO claim with particularity, *see, e.g., Haroco, Inc. v. American National Bank,* 747 F.2d 384, 405 (7th Cir.1984), *aff'd,* —— U.S. ——, 105 S.Ct. 3291 [87 L.Ed.2d 437] (1985); *UNR Industries, Inc. v. Continental Insurance Inc.,* No. 83 A 2523, slip op. (N.D.Ill. April 9, 1985) (Hart, J.);

4) plaintiff's allegations which are pleaded on information and belief contain no facts to support the foundation for the belief, *see, e.g., Duane v. Altenburg,* 297

F.2d 515, 518 (7th Cir.1962); *D & G Enterprises v. Continental Illinois National Bank and Trust Co.,* 574 F.Supp. 263, 267 (N.D.Ill.1983);

5) plaintiff has failed to allege in his complaint the basis for imposing individual liability against defendant Friend; and

6) plaintiff has failed to support his general charge of civil conspiracy to commit securities fraud, to which the specific pleading requirements of Rule 9(b) apply, with any factual allegations of the specific parties engaged in the alleged conspiracy, its time and place, and the substance of the conspiracy, *see, e.g., Koch v. Scheider,* 550 F.Supp. 846 (N.D.Ill.1982); *In re Commonwealth Oil/Tesoro Petroleum Securities Litigation,* 484 F.Supp. 253, 269 (W.D.Tex.1979).

This list is not meant to be exhaustive; it merely serves to highlight some of the glaring inadequacies of the First Amended Complaint.

■ Plaintiff attempts to justify the factual inadequacies in three ways, none of which have any merit. First, plaintiff argues that the requirements of Rule 9(b) must be relaxed because of his allegations of a conspiracy to defraud. But plaintiff cannot circumvent the requirements of Rule 9(b) by pleading conclusory allegations of such a conspiracy or scheme to defraud. *Decker v. Massey-Ferguson,* 681 F.2d 111, 119 (2d Cir.1982); *Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736, 744–45 (N.D.Ill.1981).[2]

■ Second, plaintiff offers new facts in his briefs to supply the factual allegations which are missing from the First Amended Complaint. Aside from the fact that many

of these new facts are based on nothing more than plaintiff's *understanding* and thus constitute nothing more than pure speculation as to what the facts really are (*see, e.g.,* Plaintiff's Responsive Brief at 6, 7, 27–29, 30, 43–44), plaintiff ignores that it is the First Amended Complaint which is at issue, not his briefs. "The requirements of Rule 9(b) must be fulfilled in the complaint itself.... not ... in memoranda of points and authorities...." *Arroyo v. Wheat,* 591 F.Supp. 141, 144 (D.Nev.1984) (citation omitted).

■ Third, plaintiff attempts to justify his failure to plead fraud with particularity by the long discredited argument that he needs discovery to flush out the details of his claim. As courts throughout this District and nation have held, plaintiff may not use discovery to provide facts he presently does not have to plead fraud with specificity. This Court is mindful of Justice Rehnquist's often quoted admonition that a securities law complaint "which by objective standards may have very little chance of success at trial has a settlement value to the plaintiff out of proportion to its prospects of success at trial so long as he may prevent the suit from being resolved against him by dismissal or summary judgment." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 740, 95 S.Ct. 1917, 1927, 44 L.Ed.2d 539 (1975). He further observed that such "strike suits" allow those with baseless claims to abuse the liberal federal discovery provisions, "with the right to do so representing an *in terrorem* increment of the settlement value" of the alleged fraud claim. *Id.* at 740–41, 95 S.Ct. at 1927–28.[3]

If plaintiff does not presently possess the relevant, indispensable facts to state a

---

**2.** The Court agrees with defendants that all of the cases cited by plaintiff in support of his "relaxation" argument are distinguishable. *Tankersly v. Albright,* 514 F.2d 956 (7th Cir. 1975) (court specifically stated that Rule 9(b) was "irrelevant" because the claims at issue did not involve fraud, *id.* at 964 n. 14); *Merrit v. Libby, McNeil & Libby,* 510 F.Supp. 366 (S.D.N.Y.1981) (all defendants perpetrated a scheme or conspiracy to defraud consisting of specific, detailed sequences of events); *Dominicus Americana Bohio v. Gulf & Western Industries, Inc.,* 473 F.Supp. 680 (S.D.N.Y.1979) (claimed fraud was

perpetrated on a third party, not on plaintiff); *Vasquez v. Ferre,* 404 F.Supp. 815 (D.N.J.1975) (civil rights action, clearly no allegations of fraud).

**3.** In this context, plaintiff's assertion that he needs discovery to determine facts which are in the exclusive possession of the defendants is preposterous. At least insofar as the alleged misrepresentations are concerned, no one is in a better position to know what they were and when, where, and how those misrepresentations occurred than plaintiff (presumably to whom

fraud claim with particularity, the precepts upon which Rules 9(b) and 11 are founded mandate that he has no business charging a party with fraud on the slim hope that he may use the various and expensive tools of discovery available under the Federal Rules to put meat on the bare bones of his fraud claim. Fraud is too serious a charge, and litigation is too expensive, to allow such tactics; RICO, even more so.

■ Plaintiff professes a concern that "merely amending the complaint to allege further details which have already been identified [in his responsive brief] and prior filings such as plaintiff's own Declaration may unnecessarily delay and increase the cost of this litigation." (Plaintiff's Surre-ply Brief at 22.) Although this concern has merit, and is indeed shared by this Court, it is a concern that plaintiff could have avoided by pleading fraud with sufficient partic-ularity in the first place, thereby avoiding the necessity of briefing on motions to dis-miss and of repleading his complaint. In-deed, plaintiff could have and should have withdrawn his First Amended Complaint and offered a Second Amended Complaint once the defendants' motions specifying his Rule 9(b) deficiencies were filed. That course of action would have spared his own client the legal fees associated with defend-ing a complaint which plaintiff implicitly acknowledges to be deficient by repeatedly offering to place his new factual assertions contained in his briefs or Declaration in a new complaint; it would have spared the defendants the legal fees they expended in briefing the motions to dismiss; and it would have spared this Court the consider-able time and effort required to read volu-minous briefs and numerous cases and to prepare this Opinion. Given all that has transpired, it is late in the day for plain-tiff's professed concern about the cost of this litigation to be taken seriously.

Nonetheless, the Court itself seriously is concerned that this pattern not be re-peated. Accordingly, if plaintiff's Second Amended Complaint fails to plead facts demonstrating fraud with particularity, this Court will not only dismiss that plead-ing with prejudice, but it will impose sanc-tions under Rule 11 as well.[4]

## II. *Securities Claims*

### 1. *Section 10 of the Exchange Act and Rule 10b-5*

Defendant Laventhol, which was en-gaged to and did audit Xonics' financial statements for the fiscal year ending on March 31, 1983, has moved to dismiss plain-tiff's securities fraud claims under Section 10 of the Exchange Act and Rule 10b-5[5]

they were made). Yet it is these very allega-tions which are conspicuously absent from the complaint. Furthermore, it is precisely in this respect, in addition to others, by which this case is distinguishable from *Banowitz v. State Ex-change Bank,* 600 F.Supp. 1466 (N.D.Ill.1985), in which this Court held that the complaint which "specified the exact contents of the misstate-ments," 600 F.Supp. at 1469, adequately pleaded fraud under Rule 9(b). Accordingly, plaintiff's citation to *Banowitz* is unavailing.

4. The Court regrets only that it is not empow-ered by Rule 11 to impose attorneys' fees and costs as a sanction for wasting scarce judicial resources in directing attorneys how to properly frame a complaint.

5. Rule 10b-5, promulgated under Section 10(b) of the Exchange Act, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or by the use of mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme, or arti-fice to defraud,

(2) to make any untrue statement of a ma-terial fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit of any person, in connec-tion with the purchase or sale of any security. 17 C.F.R. § 240.10b-5 (1949). To state a claim under Section 10(b) or Rule 10b-5, the plaintiff must allege the following elements: 1) that the conduct complained about occurred in connec-tion with the purchase or sale of securities, *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 731-32, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975); that the defendants misrepresented or omitted to state material facts, *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1978); that plaintiff rea-sonably and justifiably relied, to his detriment, upon the misrepresentations or omissions, *Teamsters Local 282 Pension Trust Fund v. Ange-*

because the First Amended Complaint fails to allege circumstances establishing reliance by plaintiff or causation by any act of Laventhol. Causation and, in appropriate cases, reliance are essential elements of a cause of action under Section 10(b) and Rule 10b–5 of the Exchange Act, as well as under Section 17(a) of the Securities Act. *See, e.g., Maryville Academy v. Loeb Rhoades & Co.,* 530 F.Supp. 1061, 1065–66 (N.D.Ill.1981).[6]

Laventhol argues that plaintiff accuses it of fraud solely in connection with its examination of and opinion on Xonics' financial statements for the fiscal year which ended on March 31, 1983. According to the affidavit and engagement letter submitted by Laventhol, Laventhol's audit of Xonics occurred in June, 1983, and Laventhol was engaged solely to perform the fiscal year end examination.[7] According to the First Amended Complaint, however, plaintiff Beck and the putative class purchased their stock in February, 1983. Obviously, therefore, no conduct by Laventhol could have caused plaintiff or the class members to purchase Xonics' stock, and plaintiff did

not rely on Laventhol's misrepresentations or alleged omissions in purchasing Xonics' stock.

■ Plaintiff responds first by arguing that Laventhol's liability is based upon more than its audit of Xonics' 1983 year-end financial statements:

Laventhol & Horwath, at least at this stage, cannot avoid liability, by merely stating that its responsibilities were limited to the financial statements which were submitted to the SEC after the Offer. The Plaintiff understands that Laventhol & Horwath was the outside accounting firm for Xonics prior to the Offer. It is extremely unlikely that Xonics would not have consulted with Laventhol & Horwath at or before the time of making the Offer concerning its accounting when the Offer specifically contemplated a registration statement which would necessarily include audited financials. The Declaration of Martin Seigel [sic] submitted by Laventhol & Horwath to the effect that it was engaged to render an opinion on the financial statements for the year-end March 31, 1983

---

*los,* 762 F.2d 522 (7th Cir.1985); and that defendants acted with scienter, *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

**6.** Laventhol also contends that causation is an essential element of a cause of action under Section 12(2) of the Securities Act, citing to two Eighth Circuit cases and one Fifth Circuit case. *Austin v. Loftsgaarden,* 675 F.2d 168 (8th Cir. 1983); *Alton Box Board Co. v. Goldman, Sachs & Co.,* 560 F.2d 916 (8th Cir.1977); *Croy v. Campbell,* 624 F.2d 709 (5th Cir.1980). Laventhol neglects to point out, however, that in a Seventh Circuit case relied upon elsewhere in its briefs, *Sanders v. John Nuveen & Co., Inc.,* 619 F.2d 1222 (7th Cir.1980), *cert. denied,* 450 U.S. 1005, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981), Judge Tone went to great lengths to analyze the difference between the element of reliance, which the Court held is not necessary to establish a cause of action under Section 12(2), and the element of causation, which the Court held is necessary but is satisfied merely by the fact that the misleading prospectus or oral communication affects the market price of the securities—even if they are sold through a private placement. 619 F.2d at 1225–27. Accordingly, Laventhol's motion to dismiss the Section 12(2) claims cannot be granted on the basis of lack of causation.

**7.** In his responsive brief, plaintiff suggests that this Court should not convert the motion to dismiss into a motion for summary judgment because of the affidavit and engagement letter submitted by Laventhol and requests an opportunity for further discovery pursuant to Rule 56(f) if this Court were inclined to do so. Plaintiff again fails to appreciate that discovery cannot be used to uncover a fraud. In any event, this Court is not treating the motion to dismiss as a motion for summary judgment because, as Laventhol correctly points out, it was designed only to clarify the "murky" allegations of paragraph 39 of the First Amended Complaint regarding Laventhol's limited engagement with Xonics. Those allegations permitted the inference that plaintiff complained that Laventhol rendered an opinion on all of the Xonics quarterly financial statements which existed at the time he purchased his Xonics stock. Plaintiff admits in his responsive brief that the year-end financial statements for the fiscal year ending March 31, 1983 were the only Xonics financial statements which Laventhol ever reviewed and on which Laventhol issued an opinion. Because plaintiff has clarified his pleading, the affidavit and engagement letter are not necessary to do so, and this motion to dismiss need not be and is not converted to a motion for summary judgment.

does not exclude Laventhol & Horwath's participation in the matters discussed above. The August 31, 1982 engagement letter which Laventhol has submitted as Exhibit A to the declaration of Mr. Siegel suggests that Laventhol & Horwath did, in fact, perform services for Xonics before and after the Offering, in addition to its year-end audit. For example, the audit letter states: "You have agreed to submit to us copies of all printers' proofs of reports to be filed with the Securities and Exchange Commission and of reports to be sent to your shareholders for our approval prior to filing or publication." This suggests that the inference that Xonics consulted with Laventhol prior to filing its proposed registration statements is appropriate. Moreover, it suggests that Xonics knew that it would have to consult with Laventhol & Horwath before making a filing with the SEC. The audit letter anticipates consulting and other auditing services in addition to the year-end audit from 1983. Finally, the letter reflects that the working relationship between Xonics and Laventhol had been continuing to their mutual benefit for a considerable period of time prior to the March 31, 1983 year-end audit. While the Plaintiff at this time does not know all the details of the Laventhol & Horwath/Xonics relationship during late 1982 and 1983, there is sufficient basis to support the allegations of the Complaint. (Plaintiff's Responsive Brief at 43–44.)

The very quotation of plaintiff's argument serves to refute it. It is based on nothing more than suggestion, innuendo, and plaintiff's understanding, hardly a foundation upon which to base the serious charges of fraud and RICO violations, particularly in light of the good faith obligations of Rule 11. Moreover, this Court has carefully reviewed Laventhol's engagement letter and does not agree that the inferences and suggestions plaintiff would draw from it necessarily are valid. In addition, as stated above, even if such allegations could cure the factual deficiencies of the complaint, and they cannot, plaintiff may not assert them in a responsive brief rather than in his complaint. Plaintiff's newly proffered factual hypotheses simply cannot be considered on a motion to dismiss for failure to state a claim.

■ Second, plaintiff contends that Laventhol's liability may be premised upon its alleged misrepresentations and omissions which occurred after plaintiff purchased his Xonics stock. Plaintiff argues that "the facts which will be elicited in discovery may support a jury finding of ... participation by Laventhol & Horwath in lulling investors in connection with the 1983 audited financials." (Plaintiff's Responsive Brief at 45, citing *Hoglund v. Covington County Bank*, Fed.Sec.L.Rep. [1976–77 Transfer Binder] (CCH) ¶ 95,910 at 91,419.) Again as stated above, Rule 9(b) prohibits the use of discovery as a tool to uncover insufficiently pleaded fraud claims. Apart from the Rule 9(b) problems, however, even if plaintiff and members of his class were "lulled" into holding on to their stock in Xonics by the promise of the audited 1983 year-end financials, no allegation can be found in the First Amended Complaint which obviates the problem that the wrong was fully consummated in February, 1983 when plaintiff purchased his stock, long before Laventhol prepared that financial statement. Conduct occurring after the fraudulent scheme has been fulfilled is not in furtherance of that scheme. *See Securities and Exchange Commission v. Holschuh*, 694 F.2d 130, 143–44 (7th Cir.1982); *United States v. Ledesma*, 632 F.2d 670, 677 (7th Cir.1980), *cert. denied*, 449 U.S. 998, 101 S.Ct. 539, 66 L.Ed.2d 296 (1980). Most importantly, even if plaintiff was "lulled into retaining his Xonics stock, plaintiff suffered no damage from retaining the stock because, as he admits in his responsive brief, "[p]urchasers are generally unable to sell 'restricted' stock for at least two years unless prior to that time the company issuing the stock registers it with the SEC." (Plaintiff's Responsive Brief at 5; footnote omitted.) Because by his own admission plaintiff could not have resold his stock until it was registered, his real complaint, if any, lies in

conduct occurring before he purchased his stock in February, 1983.

■ Finally, plaintiff argues that, in addition to alleging that Laventhol engaged in misrepresentations with respect to the 1983 financial statements, the First Amended Complaint alleges that Laventhol engaged in material omissions. Plaintiff thereby attempts to bring this case within the scope of the Supreme Court's holding in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). In *Affiliated Ute*, the Court held that where securities fraud is based primarily upon material omissions, reliance and "causation in fact" are presumed. As Laventhol points out, however, the alleged omissions here are simply the converse of the alleged misrepresentations: Laventhol is accused of failing to tell plaintiffs that the alleged misrepresentations by Xonics and Cantor, Fitzgerald were untrue. Every fraud case based on material misrepresentations could be turned facilely into a material omissions case, and thus plaintiff could avoid the necessity of pleading and proving causation and reliance, if this Court were to accept this argument. This case simply is not within the ambit of *Affiliated Ute* because *both* misrepresentations and omissions are alleged. *Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749 (11th Cir.1984); *Berg v. First American Bank Shares, Inc.* [Current Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,011 at 91,007 (D.D.C. April 17, 1985).

In *Berg*, the court ruled that a case "involving both alleged misstatements and omissions relating to the sale of securities cannot properly be characterized as an omissions case of the type for which the *Affiliated Ute* presumption was fashioned." *Id.* at 91,011 (citations omitted). Plaintiff's attempt to diminish *Berg* is unpersuasive. Plaintiff first characterizes the court's statement as dictum because the case was dismissed for failure to state a claim under the federal securities laws on the basis that the alleged misrepresentations and omissions were not material. Plaintiff is wrong: the court's discussion of reliance was in the context of an alternative holding. Second, plaintiff contends

that *Berg* is distinguishable because the *Berg* court found that proof of reliance was impossible. But that is precisely what Laventhol argues here: plaintiff could not have relied, as a matter of law, on an audited financial statement which issued five months after plaintiff purchased his Xonics stock. To the extent that plaintiff has pled reliance (First Amended Complaint, ¶ 47), he has done so only in a conclusory, non-fact specific manner, and thus those allegations may be disregarded in ruling on a Rule 12(b)(6) motion. Third, plaintiff argues that *Berg's* holding is nonsensical because it "suggests that a defendant can avoid the constructive reliance presumption of *Affiliated Ute* merely by lying affirmatively in addition to omitting to state material facts." (Plaintiff's Responsive Brief at 25.) The obvious response is, as stated above, that if this Court were to accept plaintiff's argument, a plaintiff could avoid the necessity of pleading and proving the essential elements of causation and reliance merely by alleging that the defendants' failure to disclose that they were lying to him when he bought his stock constituted a material omission. Moreover, plaintiff's contention purposefully misunderstands the substance of Laventhol's argument, which is that where the *only* alleged material omissions consist of the defendant's alleged failure to disclose that the alleged misrepresentations were not true, then pleading and proof of reliance and causation is essential. Finally, plaintiff's attempt to persuade this Court that the holding of *Berg* is not the rule in the Seventh Circuit by its sole citation to *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1048 (7th Cir.1977), *cert. denied*, 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977), is unavailing because the *Sundstrand* court found that the record in that case established the existence of both material misrepresentations and omissions as well as reliance thereon by plaintiff. *Id.* at 1048–49.

This Court holds that reliance cannot be presumed where the alleged material omissions constitute only the converse of the alleged affirmative and material misrepresentations. *See also Vervaecke v. Chiles*,

*Heider & Co.*, 578 F.2d 713, 716–18 (8th Cir.1978); *Grossman v. Waste Management, Inc.*, 589 F.Supp. 395, 409 (N.D.Ill. 1984).

■ To the extent, however, that plaintiff has pled that Laventhol knew of Xonics' financial problems in February, 1983 and failed to disclose those difficulties to plaintiff (First Amended Complaint, ¶¶ 45d, 46e), plaintiff has alleged a material omission in addition to material misrepresentations for which pleading and proof of reliance is unnecessary under *Affiliated Ute.* The question thus becomes whether, assuming for the purposes of this motion that Laventhol knew of Xonics' financial difficulties in February, 1983, Laventhol had a duty to disclose that information to plaintiffs. As courts have recognized, "In the absence of an affirmative duty to disclose, there can be no liability for mere inaction or silence." *Feldman v. Simkins Industries, Inc.*, 492 F.Supp. 839 (N.D.Cal.1980), *aff'd*, 679 F.2d 1299 (9th Cir.1982). *See also Chiarella v. United States*, 445 U.S. 222, 228–30, 100 S.Ct. 1108, 1114–15, 63 L.Ed.2d 348 (1980); *Grossman v. Waste Management, Inc.*, 589 F.Supp. 395, 409 (N.D.Ill.1984); *D & G Enterprises v. Continential Illinois National Bank & Trust Co.*, 574 F.Supp. 263, 269 (N.D.Ill.1983).

Laventhol was Xonics' auditor engaged only to examine and opine on its 1983 year-end financial statements. Plaintiff has not alleged that Laventhol made any affirmative statements at all to plaintiff before or at the time he purchased Xonics stock—let alone affirmative misrepresentations. Thus, even if Laventhol had actual knowledge of Xonics' problems, in the absence of affirmative misrepresentations or other active assistance in the fraud, Laventhol arguably had no duty to disclose that knowledge to plaintiff.

Another way of formulating this rule is that one may not be held liable as an aider or abettor to a fraud solely on the basis of silence and inaction. *Hochfelder v. Midwest Stock Exchange*, 503 F.2d 364, 374 (7th Cir.1974), *cert. denied*, 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974);[8] *Spatz v. Borenstein*, 513 F.Supp. 571, 583 (N.D. Ill.1981). As the Ninth Circuit, upon which plaintiff heavily relies, has stated with respect to an accountant alleged to be liable as an aider and abettor for failure to disclose his knowledge of the company's financial irregularities and inadequate records:

> There is not a scrap of authority supporting this extraordinary theory of Rule 10b–5 liability, and we will not supply any in this case.
>
> We find nothing in Rule 10b–5 that purports to impose liability on anyone whose conduct consists solely of inaction.... We perceive no reason ... thus to expand Rule 10b–5 liability. On the contrary, the exposure of independent accountants and others to such vistas of liability, limited only by the ingenuity of investors and their counsel, would lead to serious mischief.

*Wessel v. Buhler*, 437 F.2d 279, 283 (9th Cir.1971). *See also Hudson v. Capital Management International, Inc.*, 565 F.Supp. 615 (N.D.Cal.1983).[9] Accordingly, Laventhol's motion to dismiss plaintiff's Section 10(b) and Rule 10b–5 claims for failure to state a claim because the complaint fails to adequately allege reliance and causation is granted. Plaintiff is granted leave to further amend his First Amended Complaint to cure these defects if he can do so consistent with the guidelines posed by this Opinion and with his good faith obligations under Rule 11.

To a certain extent, the reliance and causation analysis of this opinion is applicable as well to the Xonics and Cantor, Fitzgerald defendants. However, because plain-

---

**8.** In a companion case on appeal to the Supreme Court, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the Court specifically declined to consider whether civil liability for aiding and abetting is appropriate under Rule 10b–5 and Section 10. *Id.* at 191 n. 7, 96 S.Ct. at 1380 n. 7.

**9.** Plaintiff's citation to *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1312 (9th Cir. 1982), is unavailing because in that case, the accounting firm was alleged to have engaged in material misrepresentations as well as omissions.

tiff has alleged, albeit in a non-fact specific manner, that Xonics and Cantor, Fitzgerald made affirmative misrepresentations to him, presumably at or before the time he purchased his stock, that SEC registration was "automatic" and "guaranteed," Xonics and Cantor, Fitzgerald are in a different position than Laventhol. Because of this and because plaintiff will have the opportunity to file a Second Amended Complaint in any event, the Court declines to rule on their Section 10 and Rule 10b–5 arguments at this time other than to note that the Court finds Xonics' argument to be intriguing.

Xonics argues that its fiscal 1983 report on Form 10–K was not materially misleading because all the necessary information was in fact disclosed, even though the "bottom line" was substantially affected by the capitalizing rather than expensing of the product enhancement costs, particularly given that plaintiff and class members were sophisticated Accredited Investors to whom relaxed disclosure requirements apply. In this regard, the Seventh Circuit's analysis in a case involving the question whether a pension fund trustee's failure to investigate before investing relieves the defendants of liability for securities fraud is instructive. *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522 (7th Cir.1985). In holding that it does not, the court stated:

> [A]n investor cannot close his eyes to a known risk. See *Sundstrand, supra*, 553 F.2d at 1044, 1048. If the investor already possesses information sufficient to call the representation into question, he cannot claim later that he relied on or was deceived by the lie. This is not because he has a duty to investigate lies or prevent intentional torts, though; it is, rather, because the securities laws create liability only when there is a "substantial likelihood" that the misrepresentation "significantly altered the 'total mix' of information" that the investor possesses.

*TSC Industries, supra*, 426 U.S. at 449 [96 S.Ct. at 2132]. If the investor knows enough so that the lie or omission still leaves him cognizant of the risk, then there is no liability. The investor cannot ask a court to focus on the lie and ignore the remaining pieces of information already available to him (or, in the case of a publicly traded security, already available to others and reflected in the price of the security).

762 F.2d at 530. *See also Zobrist v. Coal-X, Inc.*, 708 F.2d 1511 (10th Cir.1982) (investor cannot justifiably rely on oral misrepresentation that the investment was "no risk" when the investor had access to a written memorandum disclosing the risks in minute detail).

By contrast, courts in other cases have held that the antifraud provisions of the securities laws apply with full force regardless of whether the securities were issued under a private placement exemption and regardless of the nature of that exemption. *Spatz v. Borenstein*, 513 F.Supp. 571, 577 (N.D.Ill.1981). *See also Daniel v. International Brotherhood of Teamsters*, 561 F.2d 1223 (7th Cir.1977), *rev'd on other grounds*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979); *Ballard & Cordell Corp. v. Zoller & Danneberg Exploration, Ltd.*, 544 F.2d 1059, 1064 (10th Cir.1976).

Xonics has cited no authority to support the argument that a more rigorous pleading (or proof) standard applies to sophisticated investors. This Court will not conduct research for parties who are represented by counsel. If Xonics raises this argument again, it should cite relevant authority or advise the Court honestly that none exists.

**2. *Section 17(a) Claims***

Defendants Laventhol and Xonics contend that plaintiff's securities claim for violation of Section 17(a) of the 1933 Securities Act [10] must be dismissed because no pri-

---

**10.** Section 17(a) provides:
It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or

by the use of the mails, directly or indirectly—
 (1) to employ any device, scheme, or artifice to defraud, or

vate right of action exists under Section 17(a). The Seventh Circuit has previously stated that whether Section 17(a) creates a private right of action is an "open question" in this Circuit, *Peoria Union Stockyards Co. Retirement Plan v. Penn Mutual Life Insurance Co.*, 698 F.2d 320, 323 (7th Cir.1983), and Judge Easterbrook recently reiterated this position in *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 530–31 (7th Cir.1985):

> [W]e do not pass on a question that is open in this circuit—whether there is a private right of action to enforce § 17(a). See *Peoria Union Stock Yards Co. v. Penn Mutual Life Ins. Co.*, 698 F.2d 320, 323–24 (7th Cir.1983). We held in *Daniels v. Teamsters*, 561 F.2d 1223, 1244–46 (7th Cir.1977), *rev'd on other grounds*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979), that there is such an action. But the Court's reversal of our judgment, coupled with its express refusal to decide the § 17(a) issue, 439 U.S. at 557 n. 9 [99 S.Ct. at 795 n. 9], removed the authority of the discussion in *Daniel*. Since then the Court has altered the standards for implying private rights of action and pointedly declined to addressed the § 17(a) issue. *Herman & McLean, supra*, 459 U.S. [375] at 379 n. 2 [103 S.Ct. 683, 74 L.Ed.2d 548]. Our court has not considered the issue after *Daniel*, and we do not do so now. We indicated in *Penn Mutual* that in a case in which a Rule 10b–5 action is available, there is no reason to think that a § 17(a) action would have different elements, and the claim therefore adds nothing to plaintiff's arsenal. The Fund has not argued that a private party gets the benefit of the holding in *Aaron* that §§ 17(a)(2) and (3) do not require wilful misconduct. Here, as in *Penn Mutual*, the suit should proceed as if only a Rule 10b–5 claim had been raised.

Following the lead of the Seventh Circuit and other courts, this Court too has declined in the past to rule on the issue, *Banowitz v. State Exchange Bank*, 600 F.Supp. 1466, 1472–74 (N.D.Ill.1985), and plaintiff urges that we continue to do so. This Court now reaches the question, however, for three reasons: first, the Seventh Circuit has not yet reached the issue, obviously awaiting further lower court development and the proper case; second, this Court, and others in this District, are recurringly faced with the issue; and third, and most importantly, this Court agrees that, in light of the Supreme Court's decision in *Aaron v. SEC*, 446 U.S. 680, 702, 100 S.Ct. 1945, 1958, 64 L.Ed.2d 611 (1980), holding that enforcement actions under Section 17(a)(2) and 17(a)(3) do not require scienter, "§ 17(a) [may] suddenly [become] an attractive, viable alternative to actions previously brought under Rule 10b–5, at least as to those based on negligence," *Landry v. All American Assurance Co.*, 688 F.2d 381, 387 (5th Cir.1982), unless the propriety of implying a private right of action under Section 17(a) is examined.

 In support of their argument that no private right of action should be implied under Section 17(a), defendants note that, because courts are divided on the issue, *see e.g., Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555 559 n. 3 (2d Cir.1985), merely citing to case authority is not conclusive. Instead, they rely heavily on the analysis set forth by the Fifth Circuit in *Landry, supra*, and also set forth virtually verbatim in the Xonics defendants' reply brief. This Court will not state that analysis again to avoid needless repetition. Suffice it to say that, after applying the test for implying private rights of action mandated by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), as modified by the Court in *Touche Ross & Co. v. Redington*, 442

---

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), the *Landry* court held that no private right of action should be implied under Section 17(a). This Court agrees for the reasons aptly stated in *Landry.*

In his surreply brief, plaintiff does not even bother to respond to the defendants' contentions with respect to Section 17(a) except to attach a law review note which concludes that a private right of action should be implied under Section 17(a) if each of the four factors listed in *Cort, supra,* are analyzed.[11] Note, *Section 17(a) of the Securities Act of 1933: Implication of a Private Right of Action,* 29 UCLA L.Rev. 244 (1981). Plaintiff neglects to mention, however, that the *Landry* court also obviously had the same law review note before it, because it cites to that note repeatedly, and yet rejected its analysis. The *Landry* court determined, contrary to the conclusion of the note, that the language, purpose, and legislative history of Section 17(a) clearly indicate that Congress did not intend to create a private right of action. Particularly in light of the fact that the *Landry* court relies on such noted authorities on securities law as Professors Loss and Ruder[12] in reaching its conclusion, this Court holds that no private right of action exists under Section 17(a) of the 1933 Securities Act.

Accordingly, plaintiff's Section 17(a) claims against all defendants are dismissed pursuant to Rule 12(b)(6).

### 3. *Section 12(2) Claims*

■ The Laventhol and Cantor, Fitzgerald defendants have moved to dismiss the plaintiff's Section 12(2) securities claims[13] on the grounds that Section 12(2) requires strict privity between the purchasers and seller. They contend that because neither Laventhol nor Cantor, Fitzgerald owned title in the Xonics stock, strict privity between those defendants and plaintiff is lacking, and thus the complaint fails to state a claim upon which relief may be granted as to them.[14]

A split amongst the circuits exists on whether a plaintiff claiming under Section 12(2) must establish privity between himself and the defendant. The Third Circuit clearly has held that absent some special relationship—i.e., control—a purchaser not in privity with the seller has no claim under Section 12(2). *Collins v. Signetics Corp.,* 605 F.2d 110 (3d Cir.1979). The Fourth and Eighth Circuits have read the term "seller"

11. Although plaintiff's surreply brief is inadequate on this point, this Court has considered the surreply brief because defendants did not go into a detailed Section 17(a) discussion until their reply briefs were filed. Accordingly, plaintiff's motion for leave to file his surreply brief is granted. However, many of the other arguments made in plaintiff's surreply brief could have been made and should have been made in his responsive brief, and plaintiff will not be granted an opportunity again to file an additional brief to supplement arguments he should have made at the outset absent compelling reasons. Because of the disposition of this case as set forth below in this Opinion, defendants are not prejudiced by not having yet another opportunity to brief the issues.

12. 3 Loss, *Securities Regulation,* 1784 (2d ed. 1961); Ruder, *Civil Liability Under Rule 10b–5: Judicial Revision of Legislative Intent?,* 57 Nw.U. L.Rev. 627, 656–57 (1963).

13. Section 12(2) of the Securities Act provides, in pertinent part:
 Any person who—
 (2) offers or sells a security ... by the use of any means or instruments of transportation of communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.
 15 U.S.C. § 77*l* (2).

14. As the issuer of the securities, Xonics is the "seller" under Section 12(2), and thus cannot and does not raise this defense.

to include those whose participation in the sale was a "substantial factor in causing the transaction to take place." *Stokes v. Lokken*, 644 F.2d 779 (8th Cir.1981); *Lawler v. Gilliam*, 569 F.2d 1283, 1287 (4th Cir.1978). The Fifth and Ninth Circuits have read "seller" even more expansively to encompass those whose actions proximately and directly caused the injury to plaintiffs. *SEC v. Seaboard Corp.*, 677 F.2d 1289, 1294 (9th Cir.1982),[15] *Junker v. Crory*, 650 F.2d 1349, 1360 (5th Cir.1981). The Seventh Circuit, by which this Court is bound, has stated that Section 12(2) "explicitly requires privity between plaintiff-purchaser and defendant-seller...." *Sanders v. John Nuveen & Co., Inc.*, 619 F.2d 1222 (7th Cir.1980), *cert. denied*, 450 U.S. 1005, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981).[16]

Plaintiff correctly points out that the Seventh Circuit's statement in *Sanders, supra*, is dictum, but it is nonetheless a clear expression of that court's opinion on the issue and is persuasive, particularly in the absence of authority in this Circuit to the contrary. Indeed, the only recent authority in this Circuit supports the defendants' argument that Section 12(2) requires strict privity. *Kennedy v. Nicastro*, 503 F.Supp. 1116, 1118 (N.D.Ill.1980).[17] Most importantly, however, courts have noted that the Supreme Court repeatedly has read the securities laws less expansively. *See, e.g., Collins v. Signetics Corp.*, 605 F.2d at 113 (the Court's recent "teachings ... militate against excessively expansive readings" of the liability provisions of the securities

laws). Accordingly, this Court holds that Section 12(2) requires strict privity between the purchaser and the seller.

■ Plaintiff argues that even a "strict privity" approach does not preclude a finding that a broker, such as Cantor, Fitzgerald, who sells securities on behalf of another is liable under Section 12(2). To follow Beck's suggestion would render meaningless the "strict privity" requirement; it is hard to imagine what "strict privity" means if it is not that title of ownership must pass from the seller to the purchaser. Although it is true that the defendant in *Sanders, supra*, was a broker, John Nuveen & Co., Inc., that defendant was also the exclusive underwriter of the securities and had bought the notes from Winter & Hirsch, Inc. and resold them to plaintiff. Thus, plaintiff's statement that "the fact remains the broker was found liable in *Sanders* under Section 12(2)" (Plaintiff's Surreply Brief at 8) is pure sophistry in light of the obvious fact that Nuveen was not held liable as a broker, but as a seller to whom "strict privity" applied.

■ In any event, there is no question that under any stretch of the term, "strict privity" does not apply to Laventhol, whose conduct did not occur until well after the plaintiff bought his Xonics stock in February, 1983. Indeed, the Court agrees with Laventhol that even under the "substantial factor" and "transaction causation" tests enunciated by other circuits which have not

15. *But see Feldman v. Simkins Industries, Inc.*, 679 F.2d 1299, 1305 (9th Cir.1982), in which the Ninth Circuit suggests that it now requires that privity be established under Section 12.

16. Plaintiff's suggestion that the Seventh Circuit has reversed this position in a subsequent case, *Securities and Exchange Commission v. Holschuh*, 694 F.2d 130 (7th Cir.1982), is not persuasive. *See also Klein v. Computer Devices, Inc.*, 591 F.Supp. 270, 275 n. 16 (S.D.N.Y.1984). First, *Holschuh* was an SEC enforcement action under Section 5 of the Securities Act, not under Section 12(2). As the Seventh Circuit noted, Section 5 explicitly imposes liability upon any person who "directly or *indirectly*" engages in the offer or sale of unregistered securities, 640 F.2d at 140 (footnote omitted) (emphasis in original). By contrast, Section 12(2) explicitly

renders a seller liable "only to the person purchasing the security from him." Second, surely the Seventh Circuit would not reverse its pronouncement on Section 12(2) liability in *Sanders* in a footnote in a subsequent case without even mentioning its prior decision in *Sanders*, and its equivocal language in that footnote ("it seems anomalous") suggests that the court did not even consider the issue.

17. Plaintiff's attempt to distinguish *Nicastro* on the basis that the *Nicastro* court characterized the complaint at issue as a "melange of allegations with an indiscriminate shotgun invocation of virtually every operative section under the Federal Securities Laws," 503 F.Supp. at 1117, is unavailing as his complaint suffers from precisely the same problems.

required "strict privity" under Section 12(2), Laventhol did not have both prior and significant involvement in the events leading to and causing the sales transaction in February, 1983, under the few fact-specific allegations of the First Amended Complaint. Thus, Laventhol's motion to dismiss the Section 12(2) claims against it would be granted regardless of the resolution of the "strict privity" issue.

■ For the same reasons, this Court holds that plaintiff's claim that the Cantor, Fitzgerald and Laventhol defendants are liable under Section 12(2) as aiders and abettors must also be dismissed. If these defendants are not liable as principals under Section 12(2) because they do not fall within the scope of potential defendants described by that statute, liability should not extend to include them under the theory of aiding and abetting. *Hagert v. Glickman, Lurie, Eiger & Co.*, 520 F.Supp. 1028, 1034 (D.Minn.1981); *In Re Equity Funding Corporation of America Securities Litigation*, 416 F.Supp. 161, 181 (C.D. Cal.1976). In addition, in a well-reasoned recent case decided in this Circuit, Judge Evans dismissed aiding and abetting claims under Section 12(2) stating, "There would seem to be little point in pursuing both a 10(b) claim and a section 12(2) claim as an aider and abettor against the same defendants." *Hackett v. Village Court Associates*, 602 F.Supp. 856, 859 (E.D.Wisc.1985). Here too, plaintiff has raised a Section 10(b) claim against the Laventhol and Cantor, Fitzgerald defendants which may be viable if the next complaint pleads fraud with sufficient particularity. Thus, all the Section 12(2) claims against defendants Laventhol and Cantor, Fitzgerald are dismissed.[18]

18. Plaintiff has failed to tender his Xonics stock to the defendants, and thus the Section 12(2) claims must be dismissed as well because tender is "a prerequisite to recovery under § 12(2)." *Adair v. Hunt International Resources Corp.*, 526 F.Supp. 736, 748 (N.D.Ill.1981). Of course, if plaintiff tenders his Xonics stock before the filing of his Second Amended Complaint, his Section 12(2) claims cannot be dismissed for failure to meet the tender requirement.

## II. *RICO Claims*

■ This Court already has granted the defendants' motion to dismiss the RICO claims under Sections 1962(a), (c), and (d) pursuant to Rule 9(b) because it agrees that the plaintiff has failed to allege with sufficient particularity the requisites of the predicate acts constituting the "pattern of racketeering activity," in this case mail fraud, wire fraud, and securities fraud, and to properly specify which among the 14 RICO defendants are charged with what RICO violations. RICO violations based on fraud must be pleaded with the same particularity that is required in pleading fraud. *Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667, 682 (N.D.Ga.1983). Plaintiff has been granted an opportunity to file a Second Amended Complaint, however, and for that reason this Opinion will address the remaining RICO issues.

■ Defendants contend that the RICO claim under 18 U.S.C. § 1962(c) [19] must be dismissed because plaintiff has alleged the same entities as both the RICO "enterprise" and the "persons" who are liable. As the Seventh Circuit stated in *Haroco, Inc. v. American National Bank*, 747 F.2d 384, 402 (7th Cir.1984), *aff'd*, ─── U.S. ───, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), under Section 1962(c) "the 'enterprise' and the 'person' must be distinct." *See also Chicago HMO v. Trans Pacific Life Insurance Co.*, 622 F.Supp. 489, 494–95 (N.D.Ill.1985). The Seventh Circuit further explained:

However, a corporation-enterprise may be held liable under subsection (a) when the corporation is also a perpetrator. As we parse subsection (a), a 'person' (such as a corporation-enterprise) acts unlawfully if it receives income derived directly or indirectly from a pattern of racketeer-

19. Section 1962(c) provides:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
18 U.S.C. § 1962(c).

ing activity in which the person has participated as a principal within the meaning of 18 U.S.C. § 2, and if the person uses the income in the establishment or *operation* of an enterprise affecting commerce. Subsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be separate. Under subsection (a), therefore, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations. This approach to subsection (a) thus makes the corporation-enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeering. This result is in accord with the primary purpose of RICO, which, after all, is to reach those who ultimately profit from racketeering, not those who are victimized by it.

*Haroco, supra,* 747 F.2d at 402 (footnotes omitted) (emphasis in original).

Plaintiff responds by arguing that he has alleged that *each* defendant is liable under Section 1962(c) as a "person" who has conducted an "enterprise" consisting of each of the other defendants, individually or in combination. Plaintiff states specifically:

Each of the Defendants is a "person" under the statute. The following "enterprises" are identified in the Complaint at Paragraphs 31 and 68:

1. Xonics;
2. Cantor Fitzgerald;
3. Laventhol & Horwath; and
4. The enterprise consisting of the Defendants and co-conspirators acting in furtherance of the fraudulent activities described herein.

Section 1962(2) is violated if any person employed or associated with an enterprise conducts the affairs of that enterprise through a pattern of racketeering activity. Each of the Defendants did so in connection with each enterprise other than themselves. For example, each of the individual Xonics officers and directors conducted the affairs of Xonics through a pattern of racketeering activity. Friend conducted the affairs of Cantor Fitzgerald through a pattern of racketeering activity. Cantor Fitzgerald was associated with Xonics in conducting the affairs of Xonics through a patter of racketeering activity. Laventhol & Horwath was associated with Xonics in conducting the affairs of Xonics through a pattern of racketeering activity and Xonics was associated with Cantor Fitzgerald in conducting the affairs of Cantor Fitzgerald through a pattern of racketeering activity.

(Plaintiff's Responsive Brief at 57–58 (footnote omitted).)

Plaintiff's response serves only to confuse further the defects in his complaint which in turn stem from his failure to plead facts supporting and constituting each RICO claim precisely in separate counts against each separate defendant who is liable as a "person" for conducting each RICO "enterprise" through a specified "pattern of racketeering activity." As this Court has previously noted in *Chicago HMO, supra,* at 1553, "the question ... is not whether a defendant can also constitute an 'enterprise' but whether the alleged 'enterprise' has a separate and sufficiently lasting identity apart from the 'person' or 'persons' who allegedly receive any income from it (§ 1962(a)), who have any interest in it (§ 1962)(b)), or who are employed or associated with it (§ 1962(c))." Defendants are entitled to sufficient information to know precisely which enterprise it is that they are alleged to have illegally conducted through a pattern of racketeering activity. If plaintiff cannot plead a separate, lasting enterprise apart from each defendant alleged to be liable under Section 1962(c) and specify the predicate acts and conduct of that enterprise by each allegedly liable defendant with particularity, in separate counts, he has no business charging RICO violations. Accordingly, the motion to dismiss the RICO claims for failure to state a claim, as well as for failure to plead fraud with sufficient particularity, is granted. Plaintiff is granted leave to reinstate those claims in the Second Amended Complaint if

he can do so consistent with this Opinion and with the good faith obligations of Rule 11.

### III. *Other Causes of Action*

This Court declines to reach the issues posed by the state law claims until the Second Amended Complaint is filed because this Court will decline to exercise pendent jurisdiction over those claims unless the defects of the federal causes of action are cured in that complaint. *United Mine Workers v. Gibbs*, 383 U.S. 715, 716, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *United Beverage Co. of South Bend, Inc. v. Indiana Beverage Comm'n.*, 760 F.2d 155 (7th Cir.1985).

### IV. *Other Motions*

Cantor, Fitzgerald and Friend, a former Vice-President of Cantor, Fitzgerald, have also moved to dismiss Friend as a defendant on the ground that the only basis upon which plaintiff seeks to hold him liable is the conclusory allegation that Friend was a controlling person of Cantor, Fitzgerald.[20] Plaintiff does not allege in his First Amended Complaint that he had any direct contact with Friend. To the contrary, in his surreply brief plaintiff implicitly admits that he did not by relying heavily on his allegation that Friend acted through his agents. (Plaintiff's Surreply Brief at 13.) Moreover, in his responsive brief only—not in the First Amended Complaint—plaintiff asserts that he is "informed that Friend was the Cantor, Fitzgerald officer primarily responsible for arranging the Offer and was the officer with primary responsibility for supervising the marketing of the Offer." (Plaintiff's Responsive Brief at 38.)

He also offers to amend his complaint once again if this Court deems it necessary.

The facility with which plaintiff appears to devise new theories of liability and to change his serious allegations of fraud to meet each of the valid objections raised by Cantor, Fitzgerald is distressing. As Cantor, Fitzgerald aptly states:

In his original Complaint, Beck never alleged that Friend was one of the defendants who, either directly or through agents, made representations regarding registration. (See Complaint, ¶ 33; and the Cantor's Defendants' Moving Brief, at p. 17, n. 9.) In his Amended Complaint, Beck decided to include Friend as one of the defendants, who acting "through agents," made such representations. (Amended Complaint, ¶ 35.) Now, Beck comes full circle by alleging in his Brief (but not in his Amended Complaint) that Friend "made the false representation" concerning registration. (Beck's Brief, at p. 38.) Which is it, Mr. Beck?

(Cantor, Fitzgerald's Reply Brief at 29.)

■ Cantor, Fitzgerald's motion to dismiss Friend is granted without prejudice. This Court not only deems it necessary that plaintiff allege in his Second Amended Complaint the facts upon which he bases his claims that Friend should be liable either as a controlling person or as a primary actor, but also admonishes plaintiff that if he pleads such allegations on information and belief, he should set forth the facts upon which the belief is founded. Otherwise the action against Friend will be dismissed with prejudice and with the imposition of Rule 11 sanctions.

---

20. As the court in *In re Gap Stores Securities Litigation*, 457 F.Supp. 1135, 1141 (N.D.Cal. 1978), observed, "The modern-day proliferation of vice-presidents is proof itself that titles may have more to do with ego than with authority." *See also Hudson v. Capital Management International, Inc.,* [1982–83 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 99,222 at 95,905 (N.D.Cal. Aug. 24, 1982) ("[M]ere titles are not adequate indicators of control authority."); *Simkins v. National Executive Planners, Ltd.,* [1981–82 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,304 at 91,907 (N.D.N.C. Sept. 8, 1981) ("The mere fact that Rothman was the president of both TVM and

CMS is not enough to establish that he was a controlling person.") Liability under the controlling persons sections of the securities laws, Section 15 of the Securities Act and Sections 20 of the Exchange Act, requires culpable participation in the fraud perpetrated by the controlled person or entity. *See Rochez Brothers v. Rhoades*, 527 F.2d 880, 883–84 (3d Cir.1975); *Lanza v. Drexel & Co.,* 479 F.2d 1277, 1299 (2d Cir.1973); *Kennedy v. Nicastro,* 503 F.Supp. 1116, 1121 (N.D.Ill.1980); *Hudson v. Capital Management,* [1982–83 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 99,222 at 95,905.

■ Similarly, Cantor, Fitzgerald asks that paragraph 48 of the First Amended Complaint be stricken because it alleges on information and belief that Cantor, Fitzgerald engaged in insider trading in the Xonics stock. Specifically, paragraph 48 alleges:

Plaintiff is informed and believes and upon such information and belief alleges that Defendants, Cantor, Fitzgerald and Friend took advantage of their superior knowledge and Plaintiff's reliance by engaging in insider transactions in the period of approximately July and August, 1983.

In his responsive brief, Beck merely states that "he is informed that Cantor, Fitzgerald officers who had previously purchased freely tradeable shares sold these in 1983 while Cantor, Fitzgerald advised class members that registration of their own 're-stricted' shares was imminent." (Plaintiff's Responsive Brief at 21–33.)

Cantor, Fitzgerald's motion to strike paragraph 48 is granted without prejudice. Again, if plaintiff has facts to support such a belief, he should plead them in his Second Amended Complaint. If not, he has no business making such serious allegations, and Rule 11 sanctions will be imposed should he do so without a reasonable good faith basis.

■ Laventhol has also moved to strike the allegations of paragraph 37 and the two paragraphs numbered 44 concerning an SEC investigation of Xonics' financial reporting, the SEC's opinion regarding the accuracy of that reporting, and Laventhol's and Xonics' purported acquiescence in that opinion.[21] Laventhol points out that plaintiff has not alleged that he was in any way injured by the SEC's position on Laventhol's accounting treatment or by Xonics' acquiescence in the SEC's opinion or by the resulting restated financial reports.

Plaintiff responds, without citation to any authority, simply by stating:

It is entirely proper to include the allegations concerning the SEC's position in this Complaint. As discussed earlier, one of the theories upon which this Complaint is based is the fraudulent scheme involved in presenting false financials to the SEC. This effected the ability to register the securities. The guarantee that the securities would be registered was a material element of the Offer. Accordingly, the allegations in these paragraphs are material and appropriate to present the theories of the Complaint.

(Plaintiff's Responsive Brief at 63–64.)

This Court agrees with Laventhol that the allegations are irrelevant and immaterial for several reasons: first, the SEC's

21. These paragraphs, in pertinent part, are as follows:

37. Plaintiffs are informed and believe and upon such information and belief allege that pursuant to Section 8.2 of said Stock Purchase Agreements, Xonics, on or about July 13, 1983, submitted a registration statement on form S–1 to the Securities and Exchange Commission. Plaintiffs are further informed and believe and upon such information and belief allege that said registration statement was rejected by the Securities and Exchange Commission because Xonics' 1983 annual report and its 1983 Form 10–K were false and misleading....

44. Sometime during the spring and summer of 1983, the Securities and Exchange Commission commenced an investigation concerning Xonics' financial reporting to both the Securities and Exchange Commission and the investing public. On information and belief, during the course of that investigation, the Securities and Exchange Commission informed Xonics that in its opinion, Xonics'

capitalization of product enhancement expenses during Xonics' 1983 fiscal year and the first quarter of its 1984 fiscal year was not in accordance with generally accepted accounting principles and that Xonics' financial statements during that time period did not, fairly present the financial position of Xonics.

44.[sic] As a result of the investigation and conclusions of the Securities and Exchange Commission, Xonics announced to the public, on or about November 10, 1983, that it was restating its 1983 fiscal year financial statements and its first quarter 1984 fiscal year financial statements so as to treat the aforementioned product enhancement costs as expenses and not assets. As a result, Xonics' income statement for the 1983 fiscal year was restated to reflect a net loss of approximately $1.3 million dollars rather than the previously reported net income of approximately $150,-000, and Xonics' income statement for the first quarter of the 1984 fiscal year was restated to show a net loss approximately $800,-000 greater than previously reported.

opinion that the financial statements were not prepared in accordance with generally accepted accounting principles is not in itself an accusation by the SEC that the financial statements were fraudulent; second, none of the defendants have admitted that the SEC was correct in its opinion, and defendants have a right to a trial on the issue of the correctness of the financial statements originally submitted; and third, under Rules 408 and 410 of the Federal Rules of Evidence, Xonics' acquiescence in the SEC's opinion is not admissible to prove that the original financial statements are admitted to be false or improper, *see Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir.1976); *Damon Corp. v. Geheb*, [1982–83] Trade Cases (CCH) ¶ 65,-117 at 71,251 (N.D.Ill.1982). Accordingly, Laventhol's motion to strike is granted.

Laventhol has also moved for sanctions pursuant to Fed.R.Civ.P. 11 on the ground that plaintiff did not have a good faith basis for believing that Laventhol, whose audit was issued in June, 1983, had any connection whatsoever with any fraud that might have been committed on plaintiff when he purchased his Xonics stock in February, 1983. Laventhol emphasizes that plaintiff had no basis especially for his conspiracy claim. Plaintiff responds generally first by contending that his claims are sufficiently pleaded, a contention which this Court has soundly rejected, and second by reasserting his entitlement to obtain discovery before sanctions are imposed, also soundly rejected by this Court. Finally, plaintiff argues that the Seventh Circuit has held specifically that subjective bad faith is required before any Rule 11 sanctions may be imposed, citing *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1167 (7th Cir.1983). *Badillo*, however, was handed down before Rule 11 was recently amended, as plaintiff would have realized had he bothered to read the many recent Rule 11 cases cited by Laventhol before

filing his responsive brief. *See, e.g., Florida Monument Builders v. All Faith Memorial Gardens*, 48 BNA Antitrust & Trade Reg. Rep. 207 (S.D.Fla. Sept. 24, 1984); *Tedeschi v. Smith Barney, Harris Upham & Co., Inc.*, 579 F.Supp. 657 (S.D.N.Y.1984); *Wells v. Oppenheimer Co., Inc.*, 101 F.R.D. 358 (S.D.N.Y.1984).[22] Indeed, the Seventh Circuit recently has affirmed Judge Kocoras' grant of Rule 11 sanctions in deciding a motion to dismiss a complaint founded on patently frivolous claims brought under 42 U.S.C. § 1983, specifically holding that evidence of subjective bad faith is no longer necessary under Rule 11. *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 205 (7th Cir.1985).

■ Nonetheless, because the plaintiff will be allowed to replead his complaint, this Court agrees with plaintiff that imposition of Rule 11 sanctions at this point is premature. If the deficiencies of the First Amended Complaint are cured in the Second Amended Complaint by specific factual allegations against Laventhol and the other defendants, then the Rule 11 motion will be denied. Otherwise, Laventhol may reinstate its Rule 11 motion at the appropriate time. Plaintiff should keep in mind, however, that any costs or attorneys' fees which may be imposed against him for allegations against any defendant which are not based upon a reasonable belief that those allegations are true will only increase if any defendant is required to undergo further briefing on these same issues.

Finally, this Court emphasizes again that, despite the excessive length of all of the briefs filed by all of the parties in this case, they each are inadequate in certain respects, some of which have become apparent in the course of this Opinion. For example, aside from attaching a law review note in his surreply brief as a substitute for a substantive argument on Section 17(a), plaintiff implicitly acknowledges that

---

**22.** Laventhol's research is no better, however, given the fact that it cited *Textor v. Board of Regents of Northern Illinois University,* 87 F.R.D. 751 (N.D.Ill.1980), as a case in which Rule 11 sanctions were imposed without advising the Court that on appeal the Seventh Circuit re-

manded the case to a different judge for a hearing on the propriety of the assessment of attorneys' fees. *Textor v. Board of Regents of Northern Illinois University,* 711 F.2d 1387 (7th Cir.1983).

his responsive brief was inadequate by filing a surreply brief addressing the same arguments once again. Elsewhere, in arguing that Rule 11 sanctions should not be imposed, plaintiff relies upon a case which no longer applies because of the amendment of Rule 11 to relieve the very problems posed by plaintiff's argument. Laventhol fares no better in citing cases. Laventhol relies on cases in other Circuits to establish the necessity of proof of causation under Section 12(2) of the Securities Act, while ignoring a case in the Seventh Circuit, upon which it relies elsewhere in its briefs when it suits Laventhol's purposes, that holds that the element of causation is satisfied by the mere effect in market price of the stock by the fraud. Elsewhere, Laventhol relies on a case reversed and remanded subsequently by the Seventh Circuit on the very point for which Laventhol cites the case. Although the remaining parties have managed at least to cite proper cases, they fail to address thoroughly issues in which they are critically involved. Cantor, Fitzgerald goes to great lengths to argue that Section 12(2) requires privity between the purchaser and the seller of securities, but does not address at all the crucial question in this case involving Cantor, Fitzgerald: whether a broker-dealer is liable under Section 12(2) as a "seller" of securities even though the broker-dealer has never owned title in the securities. Xonics' briefs similarly go to great lengths to point out in excruciating detail the Rule 9(b) deficiencies of the First Amended Complaint, with multiple citation to authorities, but omit to cite a single case to support the crucial question involving Xonics' potential liability: whether the defendants can be held liable to sophisticated, accredited investors who allege that they were told registration with the SEC would be "automatic" and "guaranteed" but who had all the necessary information upon which to base an investment decision available to them in financial statements, even though the "bottom line" in those statements was arguably wrong. Moreover, each of the defendants' briefs suffers from a malady common to most cases involving multiple defendants: they are needlessly and exhaustively repetitive. Repetition adds neither weight nor force to argument in this Court: they stand or fall solely on the basis of merit.

The Court notes these points again neither to belabor counsel nor to highlight defects, but to avoid a recurrence in the future if a Second Amended Complaint is filed. The resources of courts in this District are overtaxed as it is, and too many worthy litigants long await resolution of their cases for this Court to waste its time conducting research that should have been presented to it succinctly but thoroughly by competent counsel. At the very least, counsel for defendants should attempt to coordinate their efforts and file one brief raising each point only once on behalf of them all.

*Conclusion*

For the reasons stated above, the First Amended Complaint is dismissed, but plaintiff is granted 30 days from the date of this Opinion to file a Second Amended Complaint if he can do so consistent with the guidelines of this Opinion under Rule 11. Discovery is stayed until the Second Amended Complaint is filed. It is so ordered.