**GL INDUSTRIES OF MICHIGAN, INC., d/b/a United Plastics Company, and George Levy, Plaintiffs,**

**v.**

**FORSTMANN–LITTLE,[1] F.L. Industries, F.L. Plastics Co., Inc., and ITT Corporation, Defendants.**

**No. NA90–96–C.**

United States District Court, S.D. Indiana, New Albany Division.

Jan. 14, 1991.

---

**1.** Incorrectly named in the caption, this defendant is properly referred to as "Forstmann Little & Co."

Jared P. Buckley, Scott W. Rooney, Charfoos & Christensen, P.C., Detroit, Mich., Steven Robison, Montgomery, Elsner & Pardieck, Seymour, Ind., for GL Industries.

Kenneth W. Maher, Michael O. Ellis, Cromer, Eaglesfield & Maher, Indianapolis, Ind., Allen Kezbom, Jane Wasman, Joel Herz, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Forstmann–Little, F.L. Industries and F.L. Plastics.

William C. Barnard, Frank J. Deveau, Donald C. Biggs, Sommer & Barnard, Indianapolis, Ind., for ITT Corporation.

BARKER, District Judge.

Plaintiffs GL Industries and George Levy filed a complaint against defendants Forstmann Little & Co. ("Forstmann Little"), F.L. Industries (FLI) and F.L. Plastics Co., Inc. ("Plastics") (collectively, the "FL defendants"), and ITT Corporation ("ITT") on June 27, 1990, in the Jackson County Circuit Court. This lawsuit was removed to federal court on July 20, 1990. Currently before the court are the following motions: a motion to dismiss filed by defendant Forstmann Little on August 27, 1990, a motion to dismiss filed by the FL defendants on August 27, 1990, motions to strike a jury demand and to dismiss filed by ITT on September 10, 1990, and plaintiffs' motion to amend their complaint, filed October 29, 1990.

## I. Background

According to the complaint, plaintiff G.L. Industries is a Michigan corporation whose C.E.O. is plaintiff George Levy, a Michigan

resident. United Plastics Company, also a Michigan corporation, operates facilities in Medora, Indiana, and Bainbridge, Georgia, and is in the business of manufacturing plastic molding parts. G.L. Industries bought the Medora and Bainbridge facilities, assets of United Plastics Company, from the FL defendants by an Asset Purchase Agreement (the "Agreement") on or about June 26, 1986. The negotiations preceding this sale apparently began in April, 1986. Affidavit of George Levy, p. 1.

The complaint alleges that these Medora and Bainbridge facilities were under the exclusive control of the FL defendants as well as Plastics' parent company, defendant Forstmann Little, from June 26, 1985, to June 26, 1986. Complaint, para. 11. Prior to June 26, 1985, the facilities were under the control of defendant ITT. Complaint, para. 12.

Forstmann Little and the FL defendants paint a different picture of the relationship between the defendants. Forstmann Little submitted the affidavit of Louis D. Mattielli, vice president and general counsel of FLI. Mattielli testified that FLI is a wholly-owned subsidiary of FL Industries Holdings, Inc. ("FLI Holdings"), a closed corporation formed in 1985 "whose sole asset was FLI and whose shareholders were two New York general partnerships and a foreign corporation." Mattielli Affidavit, p. 2. FLI acquired various assets, including the Medora manufacturing facility, from ITT on June 28, 1985, and placed those assets in a wholly-owned subsidiary which FLI named "United Plastics Company, Inc." ("UPC") *Id.* UPC remained a subsidiary of FLI until June 25, 1986. *Id.* On that date, UPC's assets, including its name, were sold to plaintiff G.L. Industries. *Id.* With the sale of the assets, UPC's name was changed to FL Plastics Co., Inc. (the defendant Plastics). *Id.* Plastics "remained in existence as a wholly-owned subsidiary of FLI to retain any residual assets and liabilities of UPC not sold to GL [Industries]." *Id.* Mattielli also states that Plastics was dissolved in October, 1989, with FLI succeeding to its liabilities. *Id.* at p. 3. Mattielli denies that Forstmann Little was ever the parent of or ever had any ownership interest in FLI, Plastics, or UPC. *Id. See also* Defendant Forstmann Little & Co.'s Memorandum of Law in Support of Motion to Dismiss, p. 4.

Count I of the plaintiffs' complaint is titled "General Allegations." In addition to various pieces of background information, this count contains allegations that each of the defendants caused environmental contamination at the Medora and Bainbridge facilities which eventually resulted in the shutdown of those facilities with resulting economic losses to the plaintiffs. The plaintiffs also allege in this count that the fraudulent misrepresentations of Forstmann Little and the FL defendants caused the plaintiffs to spend substantial amounts of money in remedying environmental conditions at the facilities and to shutdown these facilities because of unspecified economic conditions known to these defendants prior to the sale to the plaintiffs. This count also charges ITT with having failed to alert "prospective purchasers" of the extent of environmental contamination of the facilities. Complaint, para. 19. Paragraph twenty of the complaint states:

> "That the fraudulent misrepresentations on the part of the Defendants ... have resulted in intentional interference of business relationships and business expectancy on the part of the Plaintiffs, ... and that such fraudulent misrepresentations have resulted in severe and permanent economic damage to said Plaintiffs...."

Count II of the complaint names FLI and Forstmann Little as parties to the June 26, 1986 Agreement to sell the UPC assets. The plaintiffs allege that the Agreement included provisions whereby FLI, Plastics, and Forstmann Little agreed to indemnify the plaintiffs for all environmental costs they incurred. The plaintiffs claim they have incurred and will in the future continue to incur such costs, for which they seek indemnification under the Agreement.

Count III charges Forstmann Little and the FL defendants with having fraudulently misrepresented to the plaintiffs the extent of environmental contamination at the

Medora facility and the clean-up costs. This count also contains allegations that these same defendants misrepresented in some way the state of manufacturing contracts for goods at the Medora and Bainbridge facilities. The plaintiffs claim that as a result of these defendants' misrepresentations and contamination of the Medora facility, the Medora facility is unmarketable, and the Bainbridge facility apparently was sold at "substantial loss." Complaint, para. 33.

Count IV is a RICO count, charging all of the defendants except for ITT with conducting a scheme of fraudulent misrepresentation by means of mail, wire, and interstate commerce in order to sell to the plaintiffs the defective assets of UPC.

Count V is directed at defendant ITT and charges that defendant with fraud for failing to inform "prospective purchasers" about the extent of environmental contamination at the Medora facility, and possibly at the Bainbridge site, although this is unclear from the complaint. Complaint, para. 46. The plaintiffs claim to have relied upon these fraudulent omissions in their purchase of the two facilities, to their detriment.

Count VI seeks recovery under § 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607, for response costs expended for the environmental contamination at the Medora facility from ITT. Likewise, Count VII is also a CERCLA recovery action, with this count naming the FL defendants.

Counts VIII and IX are both captioned "Business Expectation and Reputation Loss as Against Defendant, F.L. Industries, Inc.," although each count names Plastics as well as FLI. Count VIII alleges that false statements made to GL Industries by these defendants resulted in false future business expectations on the part of GL Industries, causing GL Industries to suffer economic loss, damage to its business reputation, and damage to "its expectation of future profitability in business ventures...." Complaint, para. 60. Count IX makes the same allegations of

misconduct, here detrimentally relied upon by plaintiff George Levy. The plaintiffs end their complaint with a jury demand.

The plaintiffs have withdrawn Counts IV (the RICO count) and IX (Levy's business expectations, etc.). Plaintiffs' Response to F.L. Defendants' Motion to Dismiss, p. 2. The court notes that the plaintiffs added a qualification in their accompanying brief that such withdrawal was with respect to the FL defendants. Plaintiffs' Memorandum of Law in Support of Response to F.L. Defendants' Motion to Dismiss, p. 2. However, Forstmann Little is not named in Count IX of the complaint, and the plaintiffs refer to the RICO count as having been withdrawn in their Brief in Support of Plaintiffs' Response to Defendant, Forstmann–Little [sic] & Co.'s Motion to Dismiss, p. 16. Accordingly, the court finds that these counts are withdrawn entirely.

## II. Discussion

In reviewing the various motions to dismiss, the court will accept as true all well-pleaded facts. However, the court "will not strain to find inferences favorable to the plaintiffs" which are not contained within the complaint. *Coates v. Illinois State Board of Educ.*, 559 F.2d 445, 447 (7th Cir.1977). Moreover, "[m]erely stating ... conclusions ... does not make the allegations [in the complaint] sufficient. The plaintiffs' characterization of events must be consistent with the facts alleged in the complaint." *Jones v. Lampe*, 845 F.2d 755, 758 (7th Cir.1988).

### A. *Motions of Defendant ITT*

ITT has moved to strike the plaintiffs' jury demand with respect to count VI of the complaint, which seeks recovery of response costs under CERCLA § 107. Numerous cases cited by ITT support the proposition that the relief provided for in CERCLA § 107 is equitable in nature as a consequence of which there is no entitlement to a jury: *United States v. Northernaire Plating Co.*, 685 F.Supp. 1410, 1413 (W.D.Mich.1988), *aff'd* 889 F.2d 1497 (6th Cir.1989), *cert. denied*, 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767; *Wehner v.*

*Syntex Corp.,* 682 F.Supp. 39, 40 (N.D.Cal. 1987), *United States v. Dickerson,* 640 F.Supp. 448, 453 (D.Md.1986), *United States v. Mottolo,* 605 F.Supp. 898 (D.N.H. 1985), *Wehner v. Syntex Corp.,* 618 F.Supp. 37 (E.D.Mo.1984). While the plaintiffs concede in their response that they have no right to a jury with respect to restitution and damages, they assert without authority that they are entitled to a jury for the issue of liability. Perhaps the plaintiffs. could have in good faith developed an argument in support of this position, but that they did not do, choosing instead to rest on mere assertions. The court thus sees no reason to deviate from the line of authority cited by the defendant, and accordingly grants ITT's motion to strike the plaintiffs' jury demand with respect to count VI of the complaint.

ITT has also moved to dismiss counts I through V and VII through IX of the complaint, arguing among other things that ITT has never had business dealings with the plaintiffs. The plaintiffs respond in part that ITT's "request to dismiss is improper as to Counts II, III, IV, VII, VIII and IX, as said counts did not and do not present allegations against the Defendant, ITT Corporation, nor do said counts seek relief for Plaintiffs against the Defendant, ITT Corporation...." Plaintiff's [sic] Response to Defendant, ITT Corporation's Motion to Dismiss, pp. 1–2. The plaintiffs will be bound by this statement throughout the course of this litigation (as well as by their withdrawal of counts IV and IX, discussed above), and ITT's motion with respect to counts II through IV and VII through IX is dismissed as moot.

However, ITT also argues that counts I and V should be dismissed, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Count I, as discussed above, is the plaintiffs' "General Allegations" count. *See supra* pp. 697–98. The court is at a loss to make sense of this inartfully drafted count. The defendants also appear confused as to the cause of action contained in this count, and justifiably so. In another submission, the plaintiffs refer to "fraud based actions under which Count I was presented and further,

the cause of action for intentional interference, if such a cause of action is what Defendants understand to have been presented in Count I of Plaintiffs' Complaint." Plaintiffs' Response to F.L. Defendants' Motion to Dismiss, pp. 17–18. When a complaint is so poorly drafted that a court is hard-put to determine the intended cause of action, the possibility of sanctions comes to mind. When the plaintiffs intentionally take advantage of the very ambiguity which they, themselves, have created, they appear to be asking for such sanctions.

■ In the interest of putting to rest any causes of action which might lie hidden in count I, the court will discuss both intentional interference and fraud claims asserted in count I. The court agrees with ITT that the plaintiffs have failed to allege a cause of action for intentional interference with a business relationship.

The five elements which the plaintiff must prove in order to sustain its burden of proof with respect to its claim for tortious interference are:

1. that a valid business relationship exists;

2. of which the defendant knew;

3. in which the defendant tortiously interfered;

4. without justification; and

5. that damage resulted to the plaintiff.

*Flintridge Station Assoc. v. Am. Fletcher Mtg. Co.,* 761 F.2d 434, 440 (7th Cir. 1985) (citations omitted). Indiana permits recovery for tortious interference with a business relationship even in the absence of a contract. However, in such cases "it is critical that the defendant acted illegally in achieving his end."

*Economation, Inc. v. Automated Conveyor Systems, Inc.,* 694 F.Supp. 553, 556–57 (S.D.Ind.1988) (citations omitted). The plaintiffs do not allege in the complaint that they had a business relationship with another party, nor that the defendants knew of or interfered with any such relationship, with or without justification, and thus they did not allege any harm resulted from such interference. The plaintiffs also

did not allege that the defendants acted illegally. Although the plaintiffs have frequently supplemented their complaint with new allegations in their briefs (which would not be used to overcome a dismissal motion anyway), they did not make such new allegations in this case. From the fact scenario that the plaintiffs have presented, it does not appear that they could do so with respect to any of the defendants.

■ An independent reason for dismissing the intentional interference count is that it is barred by the applicable two-year statute of limitations, IC 34-1-2-2(1). *See Kaken Pharmaceutical Co. v. Eli Lilly and Co.,* 737 F.Supp. 510, 519–20 (S.D.Ind. 1989) (dismissing interference with business and contractual relations claims barred by two-year statute of limitations). The plaintiffs do not contest that such a limitations period applies to this claim. *See* Plaintiffs' Memorandum of Law in Support of Response to F.L. Defendants' Motion to Dismiss, p. 17. As the FL defendants argued, this statute of limitations should have begun to run either prior to June 25 or 26, 1986 (the date of the Agreement), the time frame of the alleged misconduct by the defendants, or when the plaintiffs learned of the environmental contamination and were allegedly caused to pay money as a result, Complaint, para. 18, or at the latest, on May 1, 1988, when GL Industries discontinued operations, Complaint, para. 13. The court need not choose which of these dates to apply, as all predate by more than two years the filing of the plaintiffs' complaint on June 27, 1990. The plaintiffs argue that the statute of limitations began to run in December, 1988, when the plaintiffs were required to close their facilities. The plaintiffs offer no argument or authority on why this latter date should be chosen, especially since only the May and not the December date was alleged in the complaint. The court thus agrees with the FL defendants that the two-year statute of limitations expired prior to June 27, 1990. Accordingly, to the extent that count I was intended to state a claim for tortious interference with a business relationship, it has failed to do so, is barred by the statute of

limitations, and is dismissed with prejudice as to all the defendants.

To the extent that count I was meant to state a claim for fraud or fraudulent misrepresentation against ITT, it is cumulative of such allegations made in count V. The only discernible difference is that while count V only seeks relief for plaintiff GL Industries, count I seeks relief for Mr. Levy as well as GL Industries. This difference is not material to the court's analysis, and the discussion which follows is intended to apply to the remaining allegations in count I as well as to count V.

■ Although the plaintiffs attempt to base a claim against ITT upon ITT's alleged failure to disclose material information to the plaintiffs, they have failed to do so since they did not allege a legally cognizable duty to disclose. "As a matter of law, where there is no duty to speak or disclose facts, silence will not constitute actionable fraud." *Barnd v. Borst,* 431 N.E.2d 161, 168 (Ind.App. 1st Dist.1982) (citations omitted); *see also Vaughn v. General Foods Corp.,* 797 F.2d 1403, 1413–14 (7th Cir.1986), *cert. denied* 479 U.S. 1087, 107 S.Ct. 1293, 94 L.Ed.2d 149 (1987); *Indiana Bank & Trust Co. v. Perry,* 467 N.E.2d 428, 431 (Ind.App. 1st Dist.1984), *Peoples Trust and Savings Bank v. Humphrey,* 451 N.E.2d 1104, 1112 (Ind.App. 1st Dist.1983).

Neither count I nor count V alleges that ITT had a duty to disclose information to the plaintiffs, despite the plaintiffs attempt to so characterize the complaint on page 13 of their brief in response to ITT's motion. Although these omissions effectively resolve our consideration of this motion to dismiss, the court notes that the plaintiffs did allege in their brief that ITT "had a duty to inform the public and prospective purchasers of environmental contamination...." Plaintiffs' Brief in Response to Defendant, ITT Corporation's Motion to Dismiss, p. 12. The plaintiffs, not surprisingly, offered no authority in support of their contention that ITT had a duty to disclose to the public. To create such an expansive duty would nullify the require-

ment. In order for the plaintiffs to establish a duty to disclose, they must show:

that either one or each of the parties, in entering into the contract or other transaction expressly reposes a trust and confidence in the other; or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied.

*Peoples Trust,* 451 N.E.2d at 1112 (quoting *McNair v. Public Sav. Ins. Co. of America,* 88 Ind.App. 386, 163 N.E. 290, 293 (1928)); *see also Vaughn,* 797 F.2d at 1414. The plaintiffs did not and could not allege such a duty, as to do so would be inconsistent with other allegations at various places in their complaint (which is not to say that a fear of being inconsistent prevented the plaintiffs from making other allegations in their complaint) where they maintain that they entered into the Agreement for the sale of UPC with FLI, Plastics and Forstmann Little. *See, e.g.,* Complaint, paras. 8–10, 23. ITT simply did not enter into a transaction with the plaintiffs, although the plaintiffs attempt to couch this in language stating that ITT omitted to convey material information to "prospective purchasers." *Id.,* paras. 19, 46. Since the plaintiffs did not inform the court until the filing of their response brief that ITT sold the facilities at issue to FLI, *see* Plaintiffs' Brief in Response to Defendant, ITT Corporation's Motion to Dismiss, p. 2, it appears that the plaintiffs were deliberately trying to lead the court to believe that the plaintiffs were among the prospective purchasers to whom ITT had a duty to disclose. While the plaintiffs maintain in their complaint that they entered into the Agreement with the other defendants, it is implausible that they relied on not affirmative statements but omissions made roughly one year earlier by a party with whom they had not negotiated.

The plaintiffs did not and cannot state a claim for fraud or fraudulent misrepresentation against the defendants as they did not allege a legally cognizable duty to disclose, and accordingly, count I, as it pertains to defendant ITT, and count V of the complaint are dismissed with prejudice.

**B.** *The FL Defendants' Motion to Dismiss*

The FL defendants have moved to dismiss counts I, III, IV, VIII, and IX of the plaintiffs' complaint. Specifically, they have moved to dismiss counts I, IV, and IX pursuant to Fed.R.Civ.P. 12(b)(6) and counts I, III, IV, VIII, and IX pursuant to Fed.R.Civ.P. 9(b). The defendants' motion is mooted with respect to counts IV and IX by the plaintiffs' withdrawal of these counts, as discussed above. Also, the defendants' motion to dismiss count I pursuant to Rule 12(b)(6) is based on the understanding that this count represents a claim for intentional interference with business relations. To the extent that count I was intended to state such a claim, the court has already dismissed this count as noted above.

What remains is the defendants' motion to dismiss counts I, III, and VIII for failure to plead fraud with the particularity required by Rule 9(b).

While a plaintiff need not plead "evidentiary facts", most courts have agreed that Rule 9(b) requires complaints to specify the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. A complaint that attributes misrepresentations to all defendants, "lumped" together for pleading purposes, generally is insufficient.

*Design Time, Inc. v. Synthetic Diamond Technology, Inc.,* 674 F.Supp. 1564, 1569 (N.D.Ind.1987) (footnote and citations omitted); *see also McKee v. Pope Ballard Shepard & Fowle, Ltd.,* 604 F.Supp. 927, 930 (N.D.Ill.1985) (same), *D & G Enterprises v. Continental Illinois Nat'l Bank & Trust Co.,* 574 F.Supp. 263, 267 (N.D.Ill. 1983) (same).

The plaintiffs' allegations fall far short of meeting these Rule 9(b) requirements. The plaintiffs have named numerous defendants and yet have failed to indi-

cate which defendants made misrepresentations, which misrepresentations or omissions were made, and when and where. Illustrative is the following paragraph from the complaint:

> 17. That the Defendants, Forstmann–Little [sic], F.L. Industries, Inc., and F.L. Plastics Co., Inc., fraudulently misrepresented to the Plaintiff, GL Industries of Michigan, Inc., the level of environmental contamination of the sites as hereinbefore mentioned, and also failed to inform said Plaintiff, GL Industries of Michigan, Inc., of the potential loss of contracts entered into between Plaintiff, GL Industries of Michigan, Inc., and the Defendant, F.L. Industries, Inc.

This paragraph and the complaint generally fail both to distinguish the roles played by the various defendants and to provide specific facts about times, places, methods and contents (what was represented with regard to the level of contamination; which contracts were in jeopardy, etc.). The plaintiffs apparently have much of this information, as their response brief is filled with new allegations not found in the complaint. Such allegations outside of the complaint will not satisfy Rule 9(b). *Beck v. Cantor, Fitzgerald & Co.*, 621 F.Supp. 1547, 1552 (N.D.Ill.1985).

The plaintiffs attempt to defend their pleadings in a number of ineffective ways. They argue, for example, that FLI and Plastics are one and the same, and that they present a united defense, so that the charges against them need not be separated. Plaintiffs' Memorandum of Law in Support of Response to F.L. Defendants' Motion to Dismiss, p. 19. Aside from the fact that this contention is unacceptably based upon allegations not found in the complaint, the plaintiffs apparently ignore that they have named other defendants as well, and the fact that the FL defendants may be presenting a united defense does not mean that they were previously acting in concert. Likewise, the plaintiffs' contention that Forstmann Little was the parent of the FL defendants does not abrogate the plaintiffs' responsibility to indicate which representations were made by whom.

In response to the FL defendants' charge that the plaintiffs did not plead the time that the alleged misrepresentations took place, the plaintiffs argue that the defendants were "well aware" of the period during which such statements are made. *Id.,* p. 20. The three month time period given by the plaintiffs covers the whole period of negotiations over the UPC assets (apparently), and yet the plaintiffs failed to specify (and this should have been in the complaint) when in this time frame misrepresentations were made.

The plaintiffs argue, "The Defendants' contention that they are unaware as to the time period when such allegations arise, is not well founded, because they are well aware when the negotiations between these parties took place...." *Id.,* pp. 20–21. The plaintiffs thus acknowledge their own role as a party to the transaction at issue. Given that they were parties to this transaction and owned and operated the Medora and Bainbridge facilities, the plaintiffs' failure to particularize their complaint is all the more inexcusable. Moreover, the fact that the defendants were allegedly aware of the events challenged is no excuse for a poorly-pled complaint. It seems safe to say as a general proposition that most defendants found liable in a lawsuit would have been aware of what they did before the complaint was filed. The key is that they have notice of the precise nature of the plaintiffs' claim when a suit is filed against them so that they can defend themselves. (Although the plaintiffs point out that the FL defendants have filed an answer, the answer obviously is only the beginning of the task of defending a lawsuit.)

■ Likewise, the plaintiffs' request that they be allowed discovery in order to meet the Rule 9(b) requirements overlooks the fact that the plaintiffs were parties to the transaction at issue. Borrowing the words of Judge Rovner:

> [P]laintiff's assertion that he needs discovery to determine facts which are in the exclusive possession of the defendants is preposterous. At least insofar as the alleged misrepresentations are concerned, no one is in a better position

to know what they were and when, where, and how those misrepresentations occurred than plaintiff....

*Beck*, 621 F.Supp. at 1552–53, n. 3.

The request for discovery by a party to the transaction at issue is no defense to a motion for dismissal under Rule 9(b), and further causes the court to wonder if the allegations were "formed after reasonable inquiry...." Fed.R.Civ.P. 11.

Although the FL defendants have requested that the fraud-based claims be dismissed with prejudice, the court will allow plaintiffs leave to amend in light of the fact that they have not previously amended their complaint, and the court cannot now say that such an amendment would be futile. The plaintiffs are granted forty-five (45) days from the date of this entry in which to amend their complaint. The cases cited in this opinion indicate the particularity required by Rule 9(b). The court gives the plaintiffs the same warning given by Judge Rovner in *Beck:* if the plaintiffs' amended complaint "fails to plead facts with particularity, this Court will not only dismiss that pleading with prejudice, but it will impose sanctions under Rule 11 as well." *Beck*, 621 F.Supp. at 1553 (footnote omitted).

### C. *Forstmann Little's Motion to Dismiss*

■ Forstmann Little has moved for a dismissal of the claims against it on the grounds that Forstmann Little played no part in the UPC asset sale at issue here and has no relationship to any of the other defendants based upon which it could be held liable. Both parties have submitted materials outside of the pleadings upon which this court has relied. Forstmann Little's motion is accordingly converted to one for summary judgment. If in light of this court's ruling any party wishes to submit additional material appropriate for consideration on a motion for summary judgment, the court shall review such submissions and, if need be, reconsider its ruling. The plaintiffs shall have twenty days from the date of this order to submit any such material, and the defendant shall have ten

days thereafter to reply. *See* Fed.R.Civ.P. 12 and 56.

In support of its motion, Forstmann Little submitted the affidavit of FLI vice president and general counsel Louis D. Mattielli, discussed above. *See supra* pp. 696–97. The plaintiffs challenged this affidavit as not having been based upon personal knowledge, so Forstmann Little responded with a second affidavit from Mr. Mattielli in which he avers that his testimony is based on personal knowledge. In addition, Forstmann Little submitted the affidavit of Gerald G. Tighe, FLI vice president from June of 1985 to the fall of 1987 (thus encompassing the negotiation period and sale of UPC assets) and then senior vice president until March, 1990.

Mr. Mattielli testified that FLI was a separate entity from Forstmann Little, with the two having separate officers, boards of directors, books and records. Second Mattielli Affidavit, p. 2. He also testified that the UPC asset sale to GL Industries was only one of several transactions that FLI has engaged in. *Id.* FLI does business in over thirty states, has more than 3,200 employees, more than $300 million in assets and more than fifteen manufacturing plants. *Id.* Mr. Tighe's affidavit coincides in large part with the testimony given by Mr. Mattielli in his two affidavits. Mr. Tighe states, among other things, that he represented himself as an employee of FLI at the negotiations with the plaintiff, and that only FLI, UPC, and their agents participated in these negotiations on the seller's side. Tighe Affidavit, p. 2.

The plaintiffs respond with the following assertions: that Forstmann Little did indeed take part in the negotiations over the sale of the UPC assets, and that Forstmann Little misled the plaintiffs into thinking that FLI was merely a dummy corporation set up to handle the asset sale for Forstmann Little. The plaintiffs also claim that Forstmann–Little is the parent of FLI.

The plaintiffs also include the following allegations:

[T]he Defendant, Forstmann–Little & Co., is a primary example of the greed

that was generated in this country during the 1980's. Forstmann–Little & Co., is a multinational private company made up of Nicholas Forstmann, William Brian Little, John Prague and Theodore J. Forstmann. The primary business of the Defendant, Forstmann–Little & Co., is to buy and sell businesses, privateering run-amuck, where a worker is nothing more than a pawn and his life is subservient to these individuals buying and selling companies with no thought regarding running the businesses.

Brief in Support of Plaintiffs' Response to Defendant, Forstmann–Little & Co.'s Motion to Dismiss, pp. 2–3. The best that can be said about these unsubstantiated allegations is that they have no place in a memorandum of law.

Looking first at the plaintiffs' argument that Forstmann–Little misled the plaintiffs regarding its role in the negotiations and that FLI was merely a shell, the court finds the omissions in the affidavit of plaintiff George Levy to be telling. Mr. Levy's affidavit was submitted as exhibit A to the plaintiffs' brief. Mr. Levy was C.E.O. of GL Industries from April through June of 1986, that is, during the period when the negotiations regarding the sale of the UPC assets were being conducted. Levy Affidavit, p. 1. Mr. Levy testified that he "was at all times led to believe that F.L. Industries, Inc., was merely a subsidiary of Forstmann–Little & Co., set up to process the sale of United Plastics Company, Inc." *Id.* at p. 2. However, Mr. Levy does not even suggest who was responsible for creating this impression. The same can be said of Mr. Levy's statement that he "was continuously of the belief that the financial backing and business backing of United Plastics Company, Inc., was supported by Forstmann–Little & Co." *Id.* The court has no basis to and will not hypothesize that Forstmann Little played a role in misguiding Mr. Levy. Such a supposition is especially unwarranted when Mr. Levy himself testifies that he took "part in negotiations with certain individuals who presented themselves as F.L. Industries, Inc. ...." *Id.* Thus, the only time that Mr. Levy's affidavit discusses representations

made to him by the defendants about the identities of the parties, the testimony contradicts the allegations made by the plaintiffs. Even the Agreement providing for the sale of UPC assets, which was submitted as Exhibit A to the first Mattielli affidavit, does not mention Forstmann Little as a party. Reading Mr. Levy's affidavit as favorably to the plaintiffs as possible, it simply provides no basis for concluding that Forstmann Little acted tortiously in misleading Mr. Levy as to the identities of the parties with whom he was negotiating.

Mr. Levy testifies and the plaintiffs claim that FLI was essentially a dummy corporation set up by Forstmann Little to handle the sale of UPC assets. However, the plaintiffs produce no authority to support this assertion. Forstmann Little, by contrast, produced the affidavits of Mr. Mattielli and Mr. Tighe, which included testimony indicating that FLI was a free-standing corporation with assets, employees, facilities and records of its own, separate from Forstmann Little. They also testified that Forstmann Little had no ownership interest in FLI. Tighe Affidavit, p. 2, Mattielli Affidavit, p. 2. Having offered nothing but unsubstantiated allegations to counter the defendant's evidence, the plaintiffs have thus failed to create a genuine issue of fact as to whether FLI is merely a dummy corporation and an alter ego or instrumentality of Forstmann Little.

▪ Likewise, the plaintiffs' argument for piercing the corporate veil in order to hold Forstmann Little liable is deficient. "It is true that the fiction of corporate entity may be disregarded where one corporation is so organized and controlled and its affairs so conducted that it is a mere instrumentality or adjunct of another corporation." *Extra Energy Coal Co. v. Diamond Energy & Resources, Inc.,* 467 N.E.2d 439, 441 (Ind.App. 3rd Dist.1984) (citations omitted). As Forstmann Little pointed out, the plaintiffs did not even allege control of FLI by Forstmann Little. The plaintiffs did submit what is purportedly the certificate of incorporation of FLI, at Tab C attached to the Brief in Support of Plaintiffs' Response to Defendant, Forst-

mann–Little & Co.'s Motion to Dismiss. While this certificate names Nicholas Forstmann, William Little and John Sprague as the three initial members of FLI's board of directors, it does not say anything about the relationship of these individuals to Forstmann Little. Moreover, even if the two corporations shared directors, this fact alone would not suffice to pierce the corporate veil. *Extra Energy*, 467 N.E.2d at 441 ("Although the two corporations shared nearly identical directors, officers, and shareholders, this fact does not destroy the distinct and separate identities of the two corporations." (citation omitted)).

In contrast to the absence of evidence in support of the plaintiffs' contentions, Forstmann Little submitted the Mattielli and Tighe affidavits which stated that Forstmann Little had no ownership interest in FLI,[2] that FLI had a separate board of directors and separate officers from Forstmann Little,[3] that FLI is separate from and not a subsidiary of Forstmann Little,[4] and that Forstmann Little had no responsibility for the operation of FLI.[5] The evidence shows that there is no reason to pierce FLI's corporate veil, and that even if the veil were to be pierced, Forstmann Little would not be revealed as a party to be held liable.

Moreover, since the plaintiffs have failed to create a genuine issue of fact as to the need to pierce the corporate veil, there is no basis for imposing CERCLA liability upon Forstmann Little. The plaintiffs apparently agree with Forstmann Little that the means for holding Forstmann Little liable under CERCLA § 107 in this action would be based on a veil-piercing theory, as used by the Fifth Circuit in *Joslyn Manufacturing Co. v. T.L. James & Co.*, 893 F.2d 80, 83–84 (5th Cir.1990) (applying veil-piercing principles with respect to issue of CERCLA § 107 liability), *U.S. app. pending*. *See* Brief in Support of Plaintiffs' Response to Defendant, Forstmann–Little

& Co.'s Motion to Dismiss, pp. 17, 21. Since the plaintiffs have not raised genuine issues with regard to piercing the corporate veil, the CERCLA claims against Forstmann Little must likewise fail.

The court thus finds no basis for holding Forstmann Little liable in this action. The plaintiffs throughout their brief argue that they need discovery in order to make their case. For example:

> it is Plaintiffs' position that they are entitled to examine the corporate books, minutes of meetings of board directors, and financial documents of both Defendants, F.L. Industries, Inc., and Forstmann–Little & Co., to identify the relationship between both, for purposes of financial backing and control by the Defendant, Forstmann–Little & Co., over the Defendant, F.L. Industries, Inc.

Brief in Support of Plaintiffs' Response to Defendant, Forstmann–Little & Co.'s Motion to Dismiss, p. 12. The court will not give the plaintiffs the fishing license they seek. As the Seventh Circuit stated, "[i]t is not permissible to file suit and use discovery as the sole means of finding out whether you have a case. Discovery fills in the details, but you must have the outline of a claim at the beginning. Rule 11 requires independent inquiry." *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988); *see also McFarland v. Memorex Corp.*, 493 F.Supp. 631, 637 (N.D.Cal.1980).

Accordingly, as the plaintiffs have failed to create any genuine issues of fact, the court hereby grants summary judgment in favor of defendant Forstmann Little with respect to all counts remaining against it.

### III. Conclusion

Therefore, ITT's motion to strike the plaintiffs' jury demand with respect to count VI of the complaint is granted. The plaintiffs have withdrawn counts IV and IX of their complaint and have stated that

---

**2.** Tighe Affidavit, paras. 4, 5, 13.

**3.** Tighe Affidavit, para. 2, Second Mattielli Affidavit, para. 7.

**4.** Tighe Affidavit, para. 13, Second Mattielli Affidavit, para. 3.

**5.** Tighe Affidavit, para. 13.

they make no claims against ITT in counts II through IV and VII through IX. The remaining counts against ITT are dismissed with prejudice. The FL defendant's motion to dismiss is granted, although the plaintiffs are given leave to amend within forty-five (45) days of the date of this entry, in accordance with the other holdings in this entry. Summary judgment is granted in favor of defendant Forstmann Little, with the condition that the parties may submit additional materials as discussed above. Moreover, in light of the court's ruling and the defendants' requests for sanctions, the plaintiffs are hereby ordered to show cause within twenty (20) days of the date of this entry why sanctions should not be imposed under Fed.R.Civ.P. 11.

It is so ORDERED.